FILED
Feb 16, 2021
02:31 PM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**WORKERS' COMPENSATION APPEALS BOARD**

| | |
|---|---|
| Kimberly Grimes ) | Docket No. 2019-06-1960 |
| ) | |
| v. ) | State File No. 60942-2018 |
| ) | |
| YRC, Inc., et al. ) | |
| ) | |
| ) | |
| Appeal from the Court of Workers' ) | |
| Compensation Claims ) | |
| Joshua D. Baker, Judge ) | |

---

### Affirmed and Remanded

---

The employee suffered compensable injuries to her right shoulder, and the employer initiated workers' compensation benefits for those injuries, including the surgical repair of the employee's rotator cuff and biceps tendon. The employee's treating physician subsequently recommended a shoulder replacement due to the employee's preexisting osteoarthritis, but the employer declined to pay for the shoulder replacement. After an expedited hearing, the trial court denied the employee's request that the employer be compelled to pay for the shoulder replacement, finding the employee had not established that she would likely prevail at trial in proving the need for shoulder replacement surgery was reasonable and necessary treatment causally related to her workplace injury. The employee has appealed. After careful consideration, we affirm the trial court's order denying the requested medical benefits and remand the case.

Judge Pele I. Godkin delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge David F. Hensley joined.

Samuel Morris, Memphis, Tennessee, for the employee-appellant, Kimberly Grimes

Stephen K. Heard, Nashville, Tennessee, for the employer-appellee, YRC, Inc.

### Factual and Procedural Background

Kimberly Grimes ("Employee") injured her right shoulder and biceps tendon on August 12, 2018, while pulling a docking plate in the course and scope of her employment with YRC, Inc. ("Employer"). Employer accepted the claim as compensable and provided Employee a panel of physicians from which she selected Dr. Blake Garside. Dr. Garside

first saw Employee on September 21, 2018. He recorded a history of bilateral shoulder arthritis, rotator cuff surgery in 2000, and a previous shoulder evaluation with administration of intra-articular corticosteroid injections approximately six months before Employee's visit, which were completed by other physicians in his practice group. Imaging studies obtained during the earlier evaluation revealed "severe glenohumeral arthritic change[s] bilaterally. No acute findings." The attending physician at that time, Dr. Edward Glenn, Jr., noted Employee's right shoulder was "more symptomatic than the left" and recommended shoulder injections. He stated that if the injections were ineffective, he would have "a more frank discussion [with Employee] regarding shoulder arthroplasty going forward."

Dr. Garside reviewed a September 5, 2018 MRI and noted "severe degenerative changes in the glenohumeral joint with large osteophytes and complete loss of articular cartilage in the glenohumeral interface." The imaging also showed "marked end-stage glenohumeral osteoarthritis," and Dr. Garside diagnosed right shoulder osteoarthritis, right biceps tendon subluxation, and a "partial [intrasubstance] right subscapularis tendon tear." His report stated that the "work-related injury on 8/12/2018 did not cause [Employee's] right glenohumeral osteoarthritis, which represents a preexisting condition." Dr. Garside discussed numerous treatment options with Employee, including total shoulder arthroplasty, but explained that any "total shoulder arthroplasty would be performed for [the] preexisting right glenohumeral osteoarthritis and [is] not greater than 50% related or caused by the 8/12/2018 injury." Employee informed Dr. Garside of her desire to proceed with a shoulder replacement surgery as well as the indicated surgery for her August 12 injury. Dr. Garside advised Employee that the surgical repair for the work injury "is unlikely to provide significant lasting pain relief or improvement in function based on her underlying preexisting right glenohumeral osteoarthritis."

Dr. Garside saw Employee again on October 9, 2018, and documented an "acute work-related injury of August [12], 2018" separate from Employee's preexisting right glenohumeral osteoarthritis. Dr. Garside emphasized, "[a]s I have explained to [Employee] on 2 occasions, in my opinion, her glenohumeral arthritis represents a pre-existing condition that was previously being treated . . . . This is unrelated to the August [12], 2018 injury."[1]

On October 18, Dr. Garside surgically repaired Employee's rotator cuff tear and biceps tendon and removed "loose bodies" from her right shoulder. Following surgery, Employee was placed on work restrictions and underwent a course of physical therapy. After continued complaints of pain, a repeat MRI was performed on March 26, 2019, which revealed "rotator cuff tendinitis" and "severe glenohumeral osteoarthritis" with "no

---

[1] Although there are several references to an August 8 date of injury in Dr. Garside's medical records, there is no dispute that Employee's work injury occurred on August 12. Accordingly, we presume for purposes of this appeal that any reference to an August 8 injury in Dr. Garside's notes is a typographical error.

evidence of recurrent rotator cuff tears" and an intact biceps tenodesis. Dr. Garside recorded that a "majority of [Employee's] symptoms are secondary to her underlying preexisting glenohumeral osteoarthritis," and he released her to continue full duty work activities on April 2, 2019. He placed Employee at maximum medical improvement on May 15 and later assigned a 5% medical impairment rating attributable to the work injury.

On July 15, 2019, Employee saw Dr. Glenn for a second opinion. Upon evaluation, he noted a "component of stiffness" in Employee's shoulder and advised her that there "[may be] some component of adhesive capsulitis present." Dr. Glenn acknowledged Employee had arthritic changes prior to her work injury but "believe[d] that the work-related injury and subsequent rotator cuff injury and repair [had] exacerbated a preexisting condition." He also believed, "based on [Employee's] job description," that her work duties "resulted in arthritic change in both of her shoulders." Dr. Glenn concluded that Employee "would benefit from shoulder arthroplasty as one definitive procedure, which would reliably address all components of her shoulder dysfunction." Employee returned to Dr. Garside on August 9, 2019, to discuss treatment options for her shoulder and again on January 22, 2020, to discuss pain management.

The parties deposed Dr. Glenn on September 11, 2020. He testified he saw Employee on two occasions. He was concerned Employee "may have developed some stiffness as a result of her surgery" and was "not very optimistic" about releasing Employee's shoulder adhesions given her underlying arthritic changes. Dr. Glenn noted Employee's diminished range of motion and recommended shoulder replacement "as the most reliable procedure to address all of [Employee's] pathology." However, when questioned about the reason for Employee's shoulder replacement surgery, Dr. Glenn responded as follows:

> Q: And [Dr. Garside] has gone on at length in several of his records to indicate that her primary problem at this point which, both you and he have indicated might be resolved by shoulder arthroplasty or shoulder replacement surgery[,] is a result of preexisting glenohumeral osteoarthritis, correct?
>
> A: Correct.
>
> . . . .
>
> Q: I don't want to simplify things, but basically are you in agreement with Dr. Garside's opinions?
>
> A: Yes.

3

Dr. Garside gave his deposition on October 7, 2020. He described Employee's underlying condition as "end-stage" arthritis, which he said means "bone on bone. She has no articular cartilage, and the articular cartilage is worn away so that she's down to subchondral bone." When questioned about the need for shoulder replacement, Dr. Garside said "the need for total shoulder arthroplasty represent[s] a preexisting condition not related to the work caused by the August 12, 2018 injury" and is "not greater than 50 percent related or caused by the August 12, 2018 injury." Dr. Garside further testified that Employee's arthritis "did not affect [his] opinion that she had an injury on August 12, which was a work-related injury," adding that Employee "has preexisting arthritis which is not related to the August 12, 2018 injury." Dr. Garside also stated that he did not see any "significant progression of arthritis" based upon his review of diagnostic studies.

Employee filed a petition for benefits seeking to compel Employer to provide additional medical benefits, including the shoulder replacement surgery. An expedited hearing was held on November 19, 2020, at which Employee testified regarding the loss of movement in her right shoulder following surgery, explaining it "hurts all the time." Following the hearing, the trial court concluded that Employee would not likely prevail at a trial in proving she was entitled to the requested medical benefits "[a]s no physician said shoulder replacement was reasonable and necessary for the treatment of her workplace injury." The trial court noted that Employee failed to offer proof that the work accident "contributed more than fifty percent" in causing the need for surgery and concluded Employee failed to prove the surgery was reasonable and necessary to treat her work injury. Employee has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2020). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence," *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018), or deposition testimony, *see Brees v. Escape Day Spa & Salon*, No. 2014-06-0072, 2015 TN Wrk. Comp. App. Bd. LEXIS 5, at *16 (Tenn. Workers' Comp. App. Bd. Mar. 21, 2015) ("[T]he trial court occupies no better position that this Appeals Board in reviewing and interpreting documentary evidence."). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory

4

construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2020).

## Analysis

On appeal**,** Employee asserts the trial court erred in denying her request for continuing medical treatment consisting of a right shoulder replacement. She contends that "[b]ut for her August 2018 injury and reparative surgery, [she] would not need the sought-after [shoulder replacement]." She also asserts that Employer should be equitably estopped from relying on her osteoarthritis to deny compensation for the shoulder surgery because Employer "knew about the [preexisting osteoarthritis] before it authorized the repair."

As an initial matter, it is undisputed that Employee sustained an injury to her right shoulder on August 12, 2018, resulting in the need for surgical repair by Dr. Garside. It is also undisputed that Employee's diagnosis of preexisting glenohumeral osteoarthritis predated her August 12 work incident and that the recommended shoulder replacement surgery would be performed to address that condition. Consequently, we must consider whether sufficient evidence was presented at the expedited hearing to indicate Employee would likely prevail in proving the work injury aggravated or exacerbated her preexisting arthritic condition necessitating the shoulder replacement surgery.[2]

We have previously considered cases in which an injured worker alleged a compensable aggravation of a preexisting condition. Specifically, we noted that the 2013 Workers' Compensation Reform Act changed the definition of "injury" in Tennessee Code Annotated section 50-6-102(14) to address the proof required to establish a compensable aggravation. The statute now specifies that

> "Injury" and "personal injury" mean an injury by accident, . . . or cumulative trauma conditions . . . arising primarily out of and in the course and scope of employment, that causes death, disablement, or the need for medical treatment of the employee; provided that:
>
> (A) An injury . . . shall not include the aggravation of a preexisting disease, condition or ailment *unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment.*

---

[2] We note that Employee's "but for" analysis is not the appropriate causation analysis under Tennessee law. An employer is not a general health insurer, *Cunningham v. Shelton Sec. Serv.*, 46 S.W.3d 131, 137 (Tenn. 2001), and, without evidence that a work accident was more than 50% the cause of the need for certain medical treatment, an employer cannot be deemed responsible for that treatment. *See* Tenn. Code Ann. § 50-6-102(14)(C).

Tenn. Code Ann. § 50-6-102(14) (2020) (emphasis added). *See also Miller v. Lowe's Home Centers, Inc.*, No. 2015-05-0518, 2015 TN Wrk. Comp. App. Bd. LEXIS 40, at *7-9 (Tenn. Workers' Comp. App. Bd. Oct. 21, 2015). In *Miller*, we concluded that "an employee can satisfy the burden of proving a compensable aggravation if: (1) there is expert medical proof that the work accident contributed more than fifty percent (50%) in causing the aggravation, and (2) the work accident was the cause of the aggravation more likely than not, considering all causes." *Id.* at *13. In addition, when the dispute centers on a request for medical treatment, the burden at an expedited hearing is on the employee to show he or she is likely to prevail at trial in proving that the work injury "contributed more than fifty percent (50%) in causing the . . . need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C).

In the present case, Dr. Garside testified that Employee's need for shoulder replacement arose primarily from her preexisting osteoarthritis. As an authorized physician selected from a panel pursuant to section 50-6-204(a)(3), Dr. Garside's causation opinion is presumed to be correct as provided in section 50-6-102(14)(E). In addition, Dr. Garside testified that Employee's "need for total shoulder arthroplasty is not greater than 50 percent related or caused by the August 12, 2018, injury." Expounding further, he stated:

> In my opinion, she had previously been diagnosed with shoulder arthritis. She had been previously treated for shoulder arthritis six months prior to her injury. The arthritis predated the August 12 [work injury] and is unrelated to the August 12 injury.

In attempting to link her need for shoulder replacement to the August 12 work injury, Employee relies on certain testimony of Dr. Glenn. Specifically, Dr. Glenn testified that Employee's "work-related injury and subsequent rotator cuff injury and repair . . . exacerbated a preexisting condition." He also testified that Employee's job duties "resulted in arthritic change in both of her shoulders." However, Dr. Glenn neither stated that an exacerbation of Employee's preexisting osteoarthritis was the primary cause of the need for shoulder replacement, considering all causes, nor did he use words supporting such a conclusion. *See* Tenn. Code Ann. § 50-6-102(14)(C).

Employee also argues that "[d]ue to [her] persistent pain and reduced range of motion, the accident sustained on the job is the nexus both for the repair work performed by Dr. Garside and for [her] present condition." Employee points to "Dr. Glenn's later observations about how the injury and Dr. Garside's repair work affected [Employee]" and contends that, by failing to make a distinction between the August 12 injury and Dr. Garside's surgical repair, Dr. Glenn "implied that the repair played some part in exacerbating the preexisting condition, thus necessitating further repair for the August [12] injury." Whether the surgery Dr. Garside performed "played some part" in exacerbating a preexisting condition is not the issue. *See* Tenn. Code Ann. § 50-6-102(14)(C). There is

no expert medical proof to support Employee's contention that her need for shoulder replacement was primarily caused by her work injury or that her work injury contributed more than fifty percent in causing the need for medical treatment, considering all causes. Likewise, there is no evidence that Dr. Garside's surgery contributed more than fifty percent in causing the need for shoulder replacement. Indeed, Dr. Garside and Dr. Glenn both testified that Employee's need for shoulder replacement surgery was the result of her preexisting glenohumeral osteoarthritis. Accordingly, the preponderance of the evidence supports the trial court's conclusion that Employee is unlikely to prevail at trial in establishing that her need for shoulder replacement is causally related to her work injury.[3]

## Conclusion

For the foregoing reasons, we affirm the trial court's order denying Employee's interlocutory request for additional medical benefits, including shoulder replacement surgery, and we remand the case. Costs on appeal are taxed to Employee.

---

[3] Because we conclude that Employee failed to establish that her preexisting osteoarthritis was exacerbated or aggravated by the August 12 work injury or her reparative surgery performed on October 18, we need not address the issue of equitable estoppel.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| Kimberly Grimes | ) | Docket No. 2019-06-1960 |
|---|---|---|
| | ) | |
| v. | ) | State File No. 60942-2018 |
| | ) | |
| YRC, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Joshua D. Baker, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 16th day of February, 2021.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Samuel Morris<br>Libby Belt | | | | X | smorris@gmlblaw.com<br>lbelt@gmlblaw.com |
| Stephen K. Heard<br>Hunter Spivey | | | | X | skheard@cclawtn.com<br>chspivey@cclawtn.com |
| Joshua D. Baker, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov